UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

TIMOTHY COLE McNEAL                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 5:22-cv-101-BJB

LT. McCUISTION SLADE et al.                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Timothy Cole McNeal brought this 42 U.S.C. § 1983 lawsuit.  This

matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v.*

*Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*,

549 U.S. 199 (2007).  For the following reasons, the Court dismisses some of Plaintiff's claims

but allows Plaintiff to file an amended Complaint.

Plaintiff has also filed a motion for default judgment.  The Defendants, however, are not

in default because they have not been served with process.  Under § 1915A, this case must be

screened beforehand, "and no process will be served in the case unless the Court orders such

service."  *Greene v. Gaylor*, No. 15-2209, 2016 WL 1178815, at *1 (W.D. Tenn. Mar. 24, 2016).

The Court, therefore, denies Plaintiff's motion (DN 14).

### I. STATEMENT OF CLAIMS

Plaintiff, a detainee at the Calloway County Jail (CCJ) when he filed his complaint, sues

the jail and CCJ Lt. Deputy Jailer McCuistion Slade in his individual and official capacities.

The Complaint describes ongoing racially charged mistreatment by jail staff.  Plaintiff

states that each day since his arrest on July 1, 2022, he was searched with a body scanner and

strip searched and that on July 7 drugs were "planted" on him.  DN 1, p. 4.  According to

Plaintiff, his "cellie," who was white, was caught with drugs so "they plant[ed] his drugs on me

and charge[d] me," rather than "both of us." *Id*. "[T]o make matters worse," he continues, "I was put in isolation for failing a drug test fresh off the streets." *Id*. Plaintiff alleges that he was charged with contraband and received 90 days in isolation, a penalty that he believes amounts to double jeopardy. *Id*. at 5. He also states that he was held for "over a month without a bond or seeing pretrial on these contraband charges." *Id*.

Also, according to the Complaint, on July 19, 2022 Plaintiff was awakened and called to booking to sign something. *Id*. at 4. He states that when he asked to read this material before he signed it, he was pepper sprayed, despite showing no aggression and having his hands up and palms out the entire time. *Id*. Plaintiff alleges that he was then threatened with being tased, strapped in a chair, and hosed down with water even though he still was not acting in an aggressive manner. *Id*.

Next, Plaintiff alleges that the second- and third-shift employees constantly threatened him, "called racial remarks," and taunted him. *Id*. According to Plaintiff, there is no ethnic diversity in the CCJ. *Id*. He states that, for a week, every time that Defendant Slade passed his door, he said, "How you like that[,] n*****." *Id*. at 4-5. "I've been strip searched for punishment and made gay slurs at," he asserts, and overheard Defendant Slade "say strip his Black n***** ass to one of his guards." *Id*. at 5.

Plaintiff further alleges that when he tried to report Defendant Slade to his supervisors, "they wait till he shows up to work then they show up together to talk to me. This is cruel and unusual punishment and downright criminal." *Id*. (cleaned up). Plaintiff also alleges, "I feel like he [presumably Slade] is trying to keep the situation in house so it[']s brushed under the rug. I file grievances[.] [I]nstead of the grievance officer seeing what the complaint is about I'm

constantly getting confronted by Lt. Slade.  I'm not sure but this feels wrong and unconstitutional and down right against the law."  *Id*.

As relief, Plaintiff requests damages and injunctive relief: specifically, that the "officers involved [be] charged and put in jail," and that the Court order them to "never work in law enforcement again."  *Id*. at 6.

## II. STANDARD OF REVIEW

When a prisoner sues a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the case if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915A(b)(1) and (2).  When screening the complaint, the Court must construe it in the light most favorable to Plaintiff and accept well-pled allegations as true.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010).  And while a reviewing court liberally construes *pro se* pleadings, *see id.* at 471; *Boag v. MacDougall*, 454 U.S. 364, 365 (1982), a complaint must include "enough facts to state a claim to relief that is plausible on its face" in order to avoid dismissal, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III. ANALYSIS

### A. Claims against the CCJ and Defendant Slade in his official capacity

First, CCJ is not a "person" subject to suit under § 1983 because municipal departments, such as jails, are not suable under § 1983.  *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991) (holding that a police department may not be sued under § 1983); *see also Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that a jail is not an entity subject to suit under § 1983).  In this situation, Calloway County would be the proper defendant.  *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990)

3

(construing claims brought against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County itself).  Further, Calloway County is a "person" for purposes of § 1983.  *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).  The Court will therefore construe the claims against CCJ as brought against Calloway County.

Similarly, claims against a corrections or law-enforcement employee in his official capacity must be construed as running against the governmental entity employing him.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  So the claims against Defendant Slade in his official capacity are in effect brought against Calloway County.  *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

The Supreme Court has recognized that a municipal government, like Calloway County, is not automatically liable for "an injury inflicted solely by its employees or agents."  *Monell*, 436 U.S. at 694.  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Id*. at 691 (emphasis in original); *see also Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (no vicarious liability for constitutional violations committed by city employees).

Instead, the municipality may be held liable only if the government itself is to blame for the unconstitutional acts—that is, if it adopted or ratified a policy or custom that caused the harm inflicted by its officers or employees.  *Monell*, 436 U.S. at 694 (indicating that "the government as an entity is responsible under § 1983" only "when execution of a government's policy or custom . . . inflicts the injury").  Congress did not render municipalities liable, in other words, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*. at 691.

4

Proving this requires a plaintiff to "point to a municipal 'policy or custom' and show that it was the 'moving force' behind the constitutional violation." *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 694). Here, Plaintiff has not identified a custom or policy that is responsible for any of the alleged constitutional deprivations. Because he fails to state a claim against the CCJ or against Defendant Slade in his official capacity, the Court dismisses those claims.

### B. Claim related to the alleged planting of drugs

According to the Complaint, when Plaintiff's white cellmate was caught with drugs, "they"—unidentified in the pleadings—"plant[ed] his drugs" on Plaintiff and charged only Plaintiff with drug possession. DN 1, p. 4. Plaintiff alleges that for the charge of possessing the contraband drugs he received 90 days in isolation, a penalty he believes is double jeopardy. *Id*. at 5. He also states that he was held for "over a month without a bond or seeing pretrial on these contraband charges." *Id*. The Court construes these claims as alleging due-process and double-jeopardy claims.

Whether Plaintiff is a convicted inmate or a pretrial detainee (which may sometimes affect the constitutional analysis under the Eighth and Fourteenth Amendments) is not clear from the pleadings. Although Plaintiff indicates on the Complaint form that he is a convicted prisoner, his Complaint, which he signed on August 2, 2022, refers to having been arrested only a month earlier. He also states, however, that he has "taken 2 y[ea]rs on this case just so I can get out of this county before they kill me,"[1] suggesting that he may have been convicted or at least reached a plea agreement. DN 1, p. 5.

---

[1] Since filing his Complaint, Plaintiff has been moved to the McCracken County Jail. *See* DNs 7, 10.

Based on the online records of the Calloway County courts,[2] Plaintiff had already been convicted for at least one offense when he filed this Complaint, though other charges remain pending. *See Commonwealth v. McNeal*, 21-cr-01014 (pending charge related to July 2022 arrest); *Commonwealth v. McNeal*, 22-cr-159 (August 2, 2022 conviction by guilty plea and two-year sentence for promoting contraband).

The Complaint addresses a period of approximately one month between July 1 and August 2, 2022. At this time, Plaintiff appears to have been a pretrial detainee in both of his criminal cases. So the protections and caselaw related to the Fourteenth Amendment apply to this Complaint. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015).

### 1. Due-process claim related to being falsely charged

Plaintiff alleges that his white cellmate, not him, should have been charged with possession of the drugs. The Court construes this claim as relating only to the disciplinary charge brought against him—not the criminal contraband charge discussed above.[3]

Plaintiff does not state a claim for allegedly being falsely accused on a disciplinary charge by prison officials. "False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing." *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004); *Jones v.*

---

[2] *See, e.g., Gardner v. Young*, No. CV 5:22-20-KKC, 2022 WL 303664, at *1 (E.D. Ky. Feb. 1, 2022) (where plaintiff indicated he was pretrial detainee, court took "judicial notice of the online records of the Circuit and District Courts of Fayette County, Kentucky"); *Denney v. Winchester*, No. 05CV307KKC, 2005 WL 3132308, at *3 (E.D. Ky. Nov. 22, 2005) ("The Court takes judicial notice of the fact that the instant plaintiff filed two other original actions in the Kentucky Court of Appeals[.]").

[3] The alternative—a lawsuit asking a federal judge to alter a state prosecutor's charging decision—would be untenable. In any event, the Defendants named here would have had no ability to initiate a criminal case because they are not prosecutors. *See Rogers v. Hill*, No. 4:05-cv–35, 2005 WL 1287415, at *2 (W.D. Ky. May 31, 2005) ("KRS 15.700 establishes a unified prosecutorial system for the Commonwealth. KRS 15.725(2) requires a County Attorney to prosecute criminal violations in state court."). To the extent Plaintiff asserts any claims against these Defendants based on Plaintiff's state criminal charges, the Court dismisses those allegations for failure to state a claim upon which relief may be granted.

*McKinney*, No. 97–6424, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) ("McKinney did not violate Jones's constitutional rights, even if the disciplinary report was false, because a prisoner has no constitutionally protected immunity from being wrongly accused.").  Here, Plaintiff makes no complaint about the procedures employed during his disciplinary hearing, and the Court dismisses this claim.

### *2. Claim for being held without due process for a month*

Plaintiff also alleges he was held for over a month "without a bond or seeing pretrial on these contraband charges."  DN 1, p. 5.  Plaintiff has been convicted on the contraband charges.  Therefore, this claim is barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See Fox v. Van Oosterum*, 987 F. Supp. 597, 609 (W.D. Mich. 1997) ("Since plaintiff's claims are based on his assertion that several of his arrests and convictions are unconstitutional because he was not provided with notice of the charges against him, counsel, an opportunity to be heard, to post bond, or to appeal, his claims regarding his incarceration … are not cognizable under § 1983" due to the *Heck* bar.).

### *3. Double jeopardy claim*

Plaintiff alleges that he was charged with possessing contraband and received 90 days in isolation, thereby subjecting him to double jeopardy.  He doesn't specify what charge or proceeding the prison discipline duplicated, but presumably he is referring to the state-court contraband charge against him.  Regardless, the "Double Jeopardy Clause was not intended to inhibit prison discipline."  *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008).  Rather, it protects against a second prosecution for the same offense after a prior acquittal or conviction and against multiple punishments for the same offense.  *See United States v. DiFrancesco*, 449 U.S. 117, 129 (1980).  "The Double Jeopardy Clause of the Fifth Amendment, applicable to the

7

States through the Fourteenth, provides that no person shall 'be subject for the same offence to be twice put in jeopardy of life or limb.'" *Brown v. Ohio*, 432 U.S. 161, 164 (1977). "Plaintiff's contention that any prison disciplinary proceedings and subsequent placement in administrative segregation violated the Double Jeopardy Clause of the Fifth Amendment fails because the Clause is not implicated by prison disciplinary proceedings." *Adkins v. Setzer*, No. 1:22-CV-276, 2022 WL 2712432, at *4 (W.D. Mich. July 13, 2022). Accordingly, the Court dismisses this claim for failure to state a claim upon which relief may be granted.

### C. Claim related to failing drug test

Plaintiff asserts that he "was put in isolation for failing a drug test fresh off the streets." DN 1, p. 4. The Court interprets this to be a due-process claim that it was improper for Plaintiff to be punished in jail for having ingested drugs before he arrived.

A pretrial detainee is "shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, which provides similar if not greater protections" than provided to a convicted inmate under the Eighth Amendment's Cruel and Unusual Punishments Clause. *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (footnote and citations omitted) (abrogated on other grounds by *Jones v. Bock*). Temporary placement in isolation/segregation in and of itself does not give rise to a constitutional claim because it does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Placement in isolation is considered atypical and significant only in "extreme circumstances, such as when the prisoner's complaint alleged that he is subject to *indefinite* administrative segregation." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (emphasis in original).

Generally, courts will consider the nature and duration of placement in segregation to determine whether it imposes an atypical and significant hardship. *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008). Here, Plaintiff does not describe the duration of his time in isolation for having failed the drug test. His Complaint was signed on August 2, 2022. DN 1, p. 6. He states that he was arrested on July 1, 2022. *Id.* at 4. Even assuming that Plaintiff was in isolation for that entire period, a one-month period in isolation does not impose an atypical and significant hardship under the precedents that guide and bind this Court. *See, e.g.*, *Sandin*, 515 U.S. at 486 (disciplinary segregation for 30 days did not impose an atypical and significant hardship); *see also Joseph*, 410 F. App'x at 868 (61-day stay in administrative segregation was not atypical and significant). The Court, therefore, dismisses this claim.

### D. Excessive-force claim

Plaintiff alleges that when he asked to read an unidentified paper before he signed it, he was pepper sprayed despite showing no aggression, and then threatened with being tased, strapped in a chair, and hosed down. He does not name the person or persons who allegedly did this.

A pretrial detainee's excessive-force claim is analyzed under the Fourteenth Amendment inquiry for excessive-force claims under *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). The Sixth Circuit recently explained that inquiry as follows:

> First, an official must purposefully, knowingly, or ("possibly") recklessly engage in the alleged physical contact with the detained person. Mere negligence or accident will not suffice. Second, the official's use of force must be objectively unreasonable. This totality-of-the-circumstances analysis hinges on the "perspective of a reasonable officer on the scene" and must account for the government's interests in prison management among other nonexhaustive considerations. Relevant here, a detained person "can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose."

9

*Hale v. Boyle Cnty.*, 18 F.4th 845, 852 (6th Cir. 2021) (internal citations omitted).

Here, according to the Complaint, Plaintiff showed no aggression but merely made a request. Yet, he was pepper sprayed. So the Plaintiff has alleged facts that could plausibly support a valid excessive-force claim that survives initial review. *See, e.g., Brown v. Shelby Cnty. Jail*, No. 220CV02893, 2021 WL 4233893, at *4 (W.D. Tenn. Sept. 16, 2021) (allowing pretrial detainee's Fourteenth Amendment claim of excessive force to continue past initial screening where "[n]othing in the complaint indicate[d] there was a need for any force at the time, let alone the amount of force alleged by Brown. Spraying a prisoner with a chemical agent without any reason to do so amounts to unnecessary, excessive force."). Plaintiff, however, has not sued the person or persons responsible for the use of excessive force. Under Federal Rule of Civil Procedure 15(a), "a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the [Prison Litigation Reform Act]." *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). The Court will allow Plaintiff to amend his excessive-force claim to name (in his or her individual capacity) the person or persons who pepper sprayed him.

### E. Racial and homophobic slurs

Plaintiff alleges that second- and third-shift employees threatened him, "called racial remarks," and taunted him. The Complaint also accuses these employees of referring to him with gay slurs. The Complaint doesn't assert or imply that these employees threatened Plaintiff's safety.

The law is clear that even reprehensible verbal harassment does not rise to the level of a Fourteenth Amendment violation in this context. *See Harper v. Tindall*, No. 3:11CV-265P, 2011 WL 2412580, at *4 (W.D. Ky. June 9, 2011) (dismissing Fourteenth Amendment "allegations of

non-physical harassment for failure to state a claim upon which relief can be granted") (citing *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *Searcy v. Gardner*, Civil No. 3:07-0361, 2008 WL 400424, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.") (citing *Paul v. Davis*, 424 U.S. 693, 700-01 (1976)). "In general, verbal harassment, taunting, and profanity, without any injury or a threat thereof, are insufficient to implicate a constitutional infringement under either the Eighth or Fourteenth Amendment." *Washington v. Knapp*, No. 4:22-CV-01269, 2022 WL 17812919, at *5 (M.D. Pa. Dec. 19, 2022).

Nor do Plaintiff's allegations constitute a violation of the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Verbal harassment and intimidation alone are not sufficient to state a claim. *See Jones v. Porter*, No. 99-1326, 2000 WL 572059, at *2 (6th Cir. May 1, 2000) ("Jones's Fourteenth Amendment equal protection claim is without merit, as a prison official's verbal harassment or idle threats do not rise to a constitutional level."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment or idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights.").

Consequently, the Court dismisses this claim for failure to state a claim upon which relief may be granted.

**F. Claim related to filing grievances**

Plaintiff alleges, "I feel like he [presumably Defendant Slade] is trying to keep the situation in house so its brushed under the rug.  I file grievances[.]  [I]nstead of the grievance officer seeing what the complaint is about I'm constantly getting confronted by Lt. Slade."  DN 1, p. 5.  Reading the Complaint liberally, the Court construes this as a claim that Plaintiff is not being afforded an effective grievance procedure because, due to the alleged actions of Slade, the grievance officer does not respond to his grievances.

Prisoners do not possess a constitutional right to a prison-grievance procedure.  *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures.").  Consequently, "there is no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. Oct. 30, 2003) (citing cases).  "Further, if the prison provides a grievance process, violations of its procedures . . . do not rise to the level of a federal constitutional right."  *Weddle v. Dunbar*, No. 1:15CV-P9-GNS, 2015 WL 2213356, at *5 (W.D. Ky. May 11, 2015) (citing *Walker*, 128 F. App'x at 445).  The Court, therefore, dismisses this claim.

**G. Request for injunctive relief**

Plaintiff requests injunctive relief in the form of "officers involved [being] charged and put in jail," such that they would  "never work in law enforcement again."

First, Plaintiff, as a private citizen, cannot bring charges against Defendants.  The "[a]uthority to initiate a criminal complaint rests exclusively with state and federal prosecutors." *Tunne v. U.S. Postal Service*, No. 5:08-cv-189, 2010 WL 290512, at *1 (W.D. Ky. Jan. 21, 2010) (quoting *Sahagian v. Dickey*, 646 F. Supp. 1502, 1506 (W.D. Wis. 1986)); *see also*

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("In our system . . . the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion.").

Additionally, Plaintiff's requested injunctive relief of enjoining Defendants from working in law enforcement fails.  "'[A] real and immediate threat that' [harm] will occur in the future . . . is required for injunctive relief." *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983)).  Here, Plaintiff has not demonstrated that preventing Defendants from continuing to work in their professions could remedy an ongoing or future, as opposed to a past, harm.  The Court, therefore, dismisses Plaintiff's claim for injunctive relief.

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court **DISMISSES** the claims against the Calloway County Jail and Defendant Slade in his official capacity, as well as the claims related to false charges, double jeopardy, drug testing, racial and homophobic slurs, grievance filings, and requests for injunctive relief under 28 U.S.C. § 1915A(b)(1).  These all fail to state a claim upon which relief may be granted.

The Court **DISMISSES** Plaintiff's claim related to being held for a month without due process under the *Heck* doctrine.

Because all of the claims against Defendants CCJ and Slade have been dismissed, the Court **DIRECTS** the Clerk to terminate them as parities to this lawsuit.

The Court **ORDERS** that **within 30 days** from the entry date of this Memorandum Opinion and Order, Plaintiff may file an amended complaint naming and stating specific individual-capacity allegations against the person or persons who tased him.

The amended complaint, should Plaintiff file one, will supersede the original Complaint, and it will undergo § 1915A review.

The Court instructs the Clerk to place this case number and "Amended" on a § 1983 complaint form and send it to Plaintiff for his use should he wish to file an amended complaint.

Should Plaintiff fail to file an amended complaint within 30 days, this case will be dismissed.

Date:   April 12, 2023

Benjamin Beaton, District Judge
United States District Court

cc:     Plaintiff, *pro se*
        Defendants
        Calloway County Attorney
B213.009

14